IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORTH AMERICAN ELITE INSURANCE COMPANY AS SUBROGEE OF PENN FOUNDATION, INC.**<br>        **Plaintiff,**<br><br>    v.<br><br>**VICTORY FIRE PROTECTION, INC.,**<br>        **Defendant and Third-Party Plaintiff**<br>    v.<br><br>**PENN BUILDERS, INC.**<br><br>        **Third-Party Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 17-3554** |

## MEMORANDUM OPINION

The question at the center of this litigation is relatively straightforward: who is responsible for covering the cost of damages caused by a burst pipe? On January 5, 2016, a pipe—part of a sprinkler system at the Penn Foundation facility in Sellersville, Pennsylvania—burst, causing over $300,000 in property damage. This commonplace—though distressing—event has produced a tangle of competing allegations and claims among the parties: Plaintiff North American Elite Insurance Company ("NAEIC"), the insurer that paid for the damage to the Penn Foundation facility; Defendant Victory Fire Protection ("Victory"), the sub-contractor that installed the system at the Penn Foundation facility; and, Third-Party Defendant Penn Builders, Inc. ("Penn Builders"), the general contractor that oversaw construction of the Penn Foundation facility.

Presently before the Court are Penn Builders' and Victory's motions for summary judgment. For the reasons that follow, both motions will be denied.

## I. BACKGROUND

The parties agree on the basic outline of events. In July 2011, the Penn Foundation hired Penn Builders as the general contractor on a project to build a new facility—what would become the Penn Foundation facility in Sellersville, Pennsylvania. The new building required a fire protection sprinkler system. On July 28, 2011, Penn Builders executed a sub-contract agreement with Victory to install that system. Victory completed its work by November 2012 and provided a letter to Penn Builders assuring that the sprinkler system met certain industry standards.

On January 5, 2016, freezing weather caused a pipe that was part of the sprinkler system to freeze and then burst. The resulting water damage from the burst pipe totaled roughly $373,000. NAEIC covered the cost of the property damage pursuant to an insurance policy it issued to the Penn Foundation. As its insurer, NAEIC subrogated the rights of the Penn Foundation.

NAEIC then filed suit against Victory to recover the costs associated with the property damage.[1] NAEIC brought three causes of action, alleging Victory (1) acted negligently in installing the fire system, (2) breached its sub-contract agreement with Penn Builders, and (3) violated an express warranty provided to Penn Builders. Victory denied those allegations and filed a third-party complaint against Penn Builders claiming that, because Penn Builders supervised and contributed to the installation of the fire system, it was fully or partially liable for any property damage.[2] NAEIC then filed its own complaint against Penn Builders that incorporated the allegations in Victory's third-party complaint. Penn Builders and Victory have

---

[1] "The rights to which the subrogee succeed are the same as, but no greater than, those of the person for whom he is substituted [and] the rights, claims, and securities to which he succeeds are taken . . . subject to any defense that might have been urged against the latter." *Pennsylvania Mfrs. Ass'n Ins. Co. v. Wolfe*, 626 A.2d 522, 525 (Pa. 1993). Accordingly, NAEIC stands in the shoes of the Penn Foundation in this case.

[2] Victory also filed a third-party complaint against two other entities—Anchor Fire Protection and SimplexGrinnell—similarly alleging that those entities were either fully or partially liable for the property damage at the Penn Foundation facility. Those entities, however, have since been dismissed from the suit.

now brought summary judgment motions.

## II. LEGAL STANDARD

Summary judgment must be granted to a moving party if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). Material facts are determined by reference to the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute "exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018). "[A]ll reasonable inferences" must be drawn in the non-moving party's favor. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

## III. ANALYSIS

### A. Penn Builders' Summary Judgment Motion

Penn Builders claims that an indemnification provision in its sub-contract agreement with Victory insulates it from any potential liability resulting from the installation of the sprinkler system, and it is therefore entitled to summary judgment on Victory's claim. Further, because NAEIC's third-party complaint are merely duplicative of Victory's allegations, Penn Builders argues that it is therefore also entitled to summary judgment on NAEIC's claims. Victory counters that the sub-contract between it and Penn Builders does not require Victory to indemnify Penn Builders for Penn Builders' own negligence. Further, Victory argues that there remains a genuine issue of material fact as to whether Penn Builders' negligence caused or contributed to the property damage, making summary judgment inappropriate.

Penn Builders' motion, then, involves two questions. First, whether the indemnification provision in the sub-contract agreement requires Victory to indemnify Penn Builders for Penn

3

Builders' own negligence. And second, whether a genuine issue of material fact exists as to whether Penn Builders' conduct caused or contributed to the property damage.

### 1. Whether Indemnification Provision Covers Penn Builders' Negligence

First and foremost, the Court must determine the scope of the indemnification provision in the sub-contract agreement between Victory and Penn Builders. If, as Penn Builders contends, the clause requires Victory to indemnify Penn Builders for Penn Builders' own negligence, then Penn Builders is entitled to summary judgment. If not, however, then summary judgment is inappropriate, so long as a genuine issue of material fact exists as to Penn Builders' negligence.

The relevant contractual language is as follows:

> The Sub-contractor agrees to indemnify and save harmless the Owner and General Contractor against loss or expense by reason of the liability imposed by law upon the Owner or General Contractor for damages because of bodily injuries, including death at any time resulting therefrom; accidentally sustained by any person or persons or on account of damage to property arising out of or on account of or in consequence of the performance of this contract, whether or not such injuries to persons or damage to the property are due or claimed to be due to any negligence of the Sub-contractor, his employees, his agents or servants.[3]

The interpretation of a contract is a question of law. *Rourke v. Pa. Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015). Under Pennsylvania law, "[c]ontracts indemnifying a party against his own negligence are valid." *Pittsburg Steel Co. v. Patterson-Emerson-Comstock, Inc.*, 171 A.2d 185, 187 (Pa. 1961). However, "[it] is well settled that the intention to include within the scope of an indemnification contract, a loss due to the indemnitee's own

---

[3] The contract contains two additional indemnification provisions, neither of which sweeps as broadly as the above language. First, Paragraph Eleven speaks specifically to damages "arising through the negligence of [Victory], or those employed by him or his agent or servants." Thus, the provision does not answer the question of whether Victory must indemnify Penn Builders for Penn Builders' own negligence. Second, Paragraph Twenty-One indemnifies "damages that may arise from performance of the subcontracted work by the subcontractor [and its agents]." This provision is narrower than the above-discussed language because it is limited to damages arising from work performed by the subcontractor, Victory—it does not discuss damages arising from Penn Builders' actions.

negligence must be expressed in clear and unequivocal language." *Id.*; *see also Perry v. Payne*, 66 A. 553 (Pa. 1907) (finding a broadly worded indemnification clause did not cover loss resulting from indemnitee's negligence); *Urban Redevelopment Auth. of Pittsburgh v. Noralco Corp.*, 422 A.2d 563, 566 (Pa. Super. 1980) (same). Indemnity clauses "expressed in broad general terms" will not suffice, absent "unequivocal language in the clause of indemnity to show that indemnification for [a party's] own negligence was intended." *Pittsburg Steel*, 171 A.2d at 189.

*Pittsburg Steel Co. v. Patterson-Emerson-Comstock, Inc.* illustrates this principle well. There, the Pennsylvania Supreme Court considered an indemnity clause in a contract between a property owner and a construction firm. The clause provided that the construction firm would "indemnify, save harmless and defend [the property owner] from all liability for loss, damage or injury to person or property in any manner arising out of or incident to performance of this order . . ." *Id.* at 186. Following a work-place accident caused by the property owner's own negligence, the property owner sought indemnification from the construction firm. The Pennsylvania Supreme Court held that, while the clause was "expressed in broad general terms," it did not express an "intention to include within [its] scope . . . a loss due to the indemnitee's own negligence," because it lacked "clearly expressed or unequivocal language . . . to show that indemnification for its own negligence was intended." *Id.* at 187, 189.

Accordingly, courts applying Pennsylvania law have upheld indemnification provisions that cover losses due to the indemnitee's own negligence only where there is clear, unequivocal language to that effect. In *Westinghouse Electric Co. v. Murphy, Inc.*, 228 A.2d 656 (Pa. 1967), for example, the Pennsylvania Supreme Court held that an indemnification provision required a contractor to indemnify an owner from the owner's negligence where the clause provided that:

5

"[Contractor] shall . . . indemnify and save harmless the [Owner] against and from any and all claims . . . [w]hether [such claims] result from negligence of [Owner] or [Owner]'s Employees or otherwise, it being the intent of this provision to absolve and protect [Owner] from any and all loss by reason of the premises." *Id.* at 169. The Pennsylvania Supreme Court reasoned that the clause's language "clearly advise[d] its reader that [the Owner] intended to indemnify itself against its own negligence." *Id.* at 174; *see also Draper v. Airco, Inc.,* 580 F.2d 91, 101 (3d Cir. 1978) (finding indemnification clause that indemnified owner against all harm "in any manner caused by . . . performance of the Contract, unless caused solely by the negligent acts or omissions of [owner]," unambiguously provided owner with a right to indemnification unless the owner was "found to be the only negligent party").

Here, the indemnification clause requires Victory to indemnify Penn Builders "for harm . . . whether or not such injuries . . . are due or claimed to be due to any negligence of the Sub-contractor,"—here, Victory—"his employees, his agents or servants." By its terms, the clause requires Victory to indemnify Penn Builders both for Victory's negligent and non-negligent conduct. Missing, however, is "clear and unequivocal language" manifesting an intention "to include within the scope of [the] indemnification contract, a loss due to the indemnitee's own negligence," *Pittsburg Steel*, 171 A.2d at 187, 189—that is, a loss due to Penn Builders' negligence.

**2. Whether Genuine Issue of Material Fact Exists**

Thus, summary judgment is appropriate only if there is no genuine issue of material fact as to whether Penn Builders' negligence caused or contributed to the property damage. Victory points to record evidence that establishes just such an issue of material fact. Specifically, a Penn Builder employee testified that he instructed Victory to move certain signage concerning the

6

sprinkler system from a designated location—an action which NAEIC alleges constituted part of Victory's negligence in installing the sprinkler system. While Penn Builders contest that its employee's instructions contributed to Victory's alleged negligence, that is ultimately a question for the jury. *Benevento v. Life USA Holding, Inc.*, 61 F. Supp.2d 407, 423 (E.D. Pa. 1999) ("[T]he existence of negligence and of contributory or comparative negligence is usually a question to be submitted to the jury upon proper instructions and the trial court should not remove the issue unless the facts leave no room for doubt.") (citing *Rizzo v. Michener*, 584 A.2d 973, 976-77 (Pa. Super. 1990)). Accordingly, Penn Builders' motion will be denied as to Victory. And because NAEIC's claim against Penn Builders mirrors Victory's allegations, the motion will also be denied as to NAEIC.

### B. Victory's Summary Judgment Motion

Victory moves for summary judgment on NAEIC's claims arguing that: (1) NAEIC's negligence claims are time barred, (2) the lack of privity between NAIEC and Victory dooms NAEIC's breach of contract claim, and (3) Victory never provided an express warranty guaranteeing the sprinkler system. The Court will address these arguments in turn.

#### 1. Whether Negligence Claim Is Time-Barred

Victory first argues that the two-year statute of limitation on NAEIC's negligence claim has run because NAEIC brought its suit roughly five years after Victory completed work on the Penn Foundation facility. NAEIC reverts that, because the property damage was the product of a hidden defect, the discovery rule tolled the statute of limitations, and thus the claim is timely.

Pennsylvania law provides that "[a]ny . . . action or proceeding to recover damages for injury to person or property which is founded on negligent . . . or otherwise tortious conduct" must "be commenced within two years." 42 Pa. C.S.A. § 5524. Generally, the statute of

7

limitations "begins to run at the time work is completed rather than when the damage occurs." *Med-Mar, Inc. v. Dilworth*, 257 A.2d 910, 915 (Pa. 1969). "It is also the law in Pennsylvania, however, that in the case of a latent defect in construction, the statute of limitations will not start to run until the injured party becomes aware, or by the exercise of reasonable diligence should have become aware, of the defect." *A. J. Aberman, Inc. v. Funk Bldg. Corp.*, 420 A.2d 594, 599 (Pa. Super. 1980). This rule reflects the more general principle that a limitation period "runs . . . from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier." *Smith v. Bell Tel. Co. of Pa.*, 153 A.2d 447, 481 (Pa. 1959). Ultimately, whether a party should reasonably have discovered the cause of harm through due diligence is a question for the jury. *A.J. Aberman*, 420 A.2d at 600; *see also Bayless v. Phila. Nat. League Club*, 579 F.2d 37, 41 (3d Cir. 1978) (applying Pennsylvania law and holding that whether a plaintiff "knew or should have known" that harm "resulted from [defendant's conduct] is for the jury").

Here, NAEIC filed suit on August 4, 2017—over four years after Victory completed work at the Penn Foundation facility. However, NAEIC presented evidence supporting its contention that the allegedly negligent installation of the sprinkler system constituted "a latent defect in construction" that tolled the statute of limitations. Specifically, NAEIC's expert concluded that Victory failed (1) to identify the location of certain valves on schematics of the system; and, (2) to place required signage marking the location of those valves. *Cf. Fed. Labs., Inc. v. Barringer Research Ltd.*, 696 F.2d 271, 274 (3d Cir. 1982) (noting that, at summary judgment, a district court is not "at liberty to disbelieve the good faith statements of experts contained in depositions or affidavits and presented by the non-moving party"). NAEIC argues that the nature of Victory's negligence made it impossible to discover the defect until the pipe

8

burst. Victory fails to respond to this argument at all. More fundamentally, the question of whether NAEIC was "aware, or by the exercise of reasonable diligence should have become aware, of the defect" in the sprinkler system is reserved for the jury. *A.J. Aberman*, 420 A.2d at 600; *see also Bayless*, 579 F.2d at 41. Thus, Victory is not entitled to summary judgment on the grounds that NAEIC's claim is time barred.

### 2. Whether NAEIC Can Recover on a Breach of Contract Claim

Victory next argues that NAEIC cannot recover on its breach of contract claim because no contract existed between Victory, the sub-contractor, and the Penn Foundation, the owner of the facility—rather, Victory only contracted with Penn Builders, the general contractor. Because NAEIC stands in the Penn Foundation's shoes as its subrogee, Victory argues that NAEIC therefore cannot recover on a breach of contract claim. For its part, NAEIC acknowledges that there is no privity between the Penn Foundation and Victory—and so, by extension, no privity between NAEIC and Victory. Nevertheless, NAEIC argues that the Penn Foundation was an intended third-party beneficiary of the contract between Victory and Penn Builders, and thus the Penn Foundation—and, again, by extension NAEIC—may maintain a breach of contract claim on that contract.

Generally, privity of contract is required for a party to bring a breach of contract claim. *See Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961) ("Generally, a party to a contract does not bec[ome] liable for a breach thereof to one who is not a party thereto."). "This rule is not ironclad, however, and parties who lack privity can bring a cause of action for breach of contract if they can show themselves to be intended third party beneficiaries of the contract." *Caciolo v. Masco Contractor Services E., Inc.*, 2004 WL 2677170, at *2 (E.D. Pa. Nov. 22, 2004). Pennsylvania law provides that:

> [A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti v. Weborg*, 609 A.2d 147, 150-51 (Pa. 1992) (internal citations omitted and emphasis in original).

The Third Circuit, in applying Pennsylvania law, has found that a property owner is an intended third-party beneficiary to a sub-contract agreement where "the contract explicitly contemplated the provision of services by [the subcontractor] to [the owner]." *Sears, Roebuck & Co. v. Jardel Co.*, 421 F.2d 1048, 1054 (3d Cir. 1970); *Caciolo*, 2004 WL 2677170, at *3 (applying Pennsylvania law and finding owner an intended third-party beneficiary to sub-contract agreement). According to the Third Circuit, language in a sub-contract agreement that identifies the owner of the building "of which the [sub-contractor's] work forms a part" is sufficient to convey rights to the owner "under the contract as a third-party beneficiary." *Sears*, 421 F.2d at 1054 n.18.

Here, the sub-contract agreement between Victory and Penn Builders "explicitly contemplated the provision of services by [Victory] to [the Penn Foundation]." The sub-contract agreement defined the project as "Proposed Additions & Renovations to Penn Foundation Administration Buildings, 807 Lawn Ave., Sellersville, PA 18690," and referenced the Penn Foundation as "the Owner" of the project.[4] Furthermore, the sub-contract agreement grants the Owner—that is, the Penn Foundation—authority over Victory's work: "No extra work or

---

[4] While the sub-contract agreement use the term "Owner" without explicitly defining it, when read in context the term is not ambiguous—the sub-contract clearly specifies that the work is to be done "for Penn Foundation Inc." *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 (3d Cir. 1980) ("When a written contract is clear and unequivocal, its meaning must be determined by its contents alone"). Victory does not suggest that the meaning of "Owner" in the sub-contract agreement is in anyway ambiguous.

changes under this contract will be recognized unless authorized and paid for by the Owner . . ." The contractual language, then, is sufficient to convey rights to the Penn Foundation—and by extension NAEIC—"under the contract as a third-party beneficiary."

Accordingly, the lack of privity between Victory and the Penn Foundation—and by extension NAEIC—does not doom NAEIC's breach of contract claim. Victory is therefore not entitled to summary judgment on NAEIC's breach of contract claim.

### 3. Whether NAEIC Can Recover on a Breach of Express Warranty Claim

Finally, Victory argues that NAEIC cannot recover on its breach of express warranty claim. Victory argues that, whatever warranties it made to Penn Builders concerning the sprinkler system, they were not communicated directly to the Penn Foundation—and, again, by extension to NAEIC. In response, NAEIC argues that it may bring a breach of warranty claim because, in warranting the sprinkler system, Victory was knowingly acting for the benefit of the Penn Foundation.

"[E]xpress warranties are bargained, 'dickered,' individualized promises that the goods will perform up to the specific standards set forth in that warranty." *Goodman v. PPG Industries*, 849 A.2d 1239, 1245 (Pa. Super. 2004). Because "express warranties are based on the notion of offer and acceptance," Pennsylvania law does not permit "third parties the benefit of an express warranty when no evidence exists that they were aware of the terms of the warranty or the identity of the party issuing the warranty." *Id.* at 1246. Accordingly, "third parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly, or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the

warranty." *Id.*

Here, there is sufficient record evidence from which an objective fact-finder could reasonably conclude that (1) Victory intended to extend the warranty to the Penn Foundation, and (2) the Penn Foundation was aware of the specific terms of the warranty, and the identity of the party issuing the warranty. Specifically, the record includes letters that Victory sent to both Penn Builders and Lederach Associates—the project's architect—in which Victory warranted that the sprinkler system complied with certain industry standards. In the letters, Victory acknowledged that it installed the sprinkler system for the Penn Foundation project. A reasonable jury could conclude from those letters that Victory intended to extend that warranty to the Penn Foundation and that, through its agents, the Penn Foundation was "aware" of the terms of the warranty. *Cf. Am. Stores Properties, Inc. v. Spotts, Stevens & McCoy, Inc.,* 651 F. Supp. 2d 349, 355 (E.D. Pa. 2009) (finding sufficient facts plead to sustain express warranty claim).

Accordingly, NAEIC may maintain its breach of warranty claim—Victory's summary judgment motion will be denied.

## IV. CONCLUSION

In sum, both Victory and Penn Builders' motion for summary judgment will be denied. An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**

**Date: January 28, 2019**